IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| HATTIE GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | No.  C04-2020 EJM |
| vs. | ) | |
| | ) | |
| DYMACOL/ALLIED INTERSTATE INC., | ) | ORDER |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's resisted Motion for Summary Judgment, filed August 1, 2005.  Denied.

Plaintiff, a resident of Waterloo, Iowa, brings this action seeking damages against defendant Dymacol/Allied Interstate, Inc. (Allied) for defendant's alleged employment discrimination, not recalling plaintiff from a layoff, based upon plaintiff's race in violation of 42 USC Section 2000e et seq. (Count 1) and IC Section 216 (Count 2).  The court has jurisdiction pursuant to 28 USC Sections 1331 and 1367.

Plaintiff asserts that defendant, a provider of accounts receivable telephonic collections with a call center in Cedar Falls, Iowa, laid her off from her supervisory position there in December, 2002.  A Caucasian supervisor was also laid off at the same time.  During plaintiff's layoff, the Caucasian supervisor was recalled and offered a lower level collection job at supervisor's pay (which she declined).  Plaintiff claims she was not

recalled and offered such a position. In April 2003, the Caucasian was called back to work as a supervisor. Plaintiff asserts that she was not recalled due to her race.

Defendant seeks summary judgment, asserting that as to plaintiff's claim of not being recalled for the lower level collection job during her layoff, it did contact her and offered her that position, and she declined to take it. Additionally, defendant asserts that plaintiff never applied for that job in any event. Further, defendant asserts that other African-Americans were hired for the lower-level collection position during the same period. Defendant urges that it is the same supervisor, Roxanne Droste, who originally hired and then promoted plaintiff, whom plaintiff now claims discriminated against her on the basis of race. Moreover, defendant asserts that plaintiff worked full-time as a teacher in the local school system, and that she therefore could not be available during the working hours when defendant needed a supervisor. Defendant asserts that plaintiff's prior work deficiencies and her self-determined schedule were the reason for not selecting her, rather than race.

> Fed. R. Civ. P. 56(c) provides that summary judgment shall be entered if the "pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In deciding whether to grant a motion for summary judgment, the district court must view the evidence in favor of the party opposing the motion and give him the benefit of all reasonable inferences.  Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir. 1984).  The opposing parties must resist the motion by setting forth specific facts showing that there is a genuine issue of material fact for trial.  Id., (citing Fed. R. Civ. P. 56(e) and Burst v. Adolph Coors Co., 650 F.2d 930, 932 (8th Cir. 1981)).

Green v. St. Louis Housing Authority, 911 F.2d 65, 68 (8th Cir. 1990).

It appears undisputed that on March 29, 2000, plaintiff, an African-American, was hired by Allied employee Roxanne Droste as a telephone support bill collector on Allied's night shift in the call center, from 4:30 - 10:00 p.m., and Droste promoted plaintiff to a supervisor position a month later. Plaintiff was then also employed full-time as a teacher in the Waterloo Community Schools, and upon her hiring she advised Allied that she would be unavailable for work prior to 3:30 p.m. due to her teaching position. In November, 2002, Allied instructed Droste to reduce the call center's payroll expenses immediately, leading to the layoffs of seventeen collectors, one administrative employee, and two supervisors from the night shift - plaintiff, and April Paeper. On January 14, 2003, Droste began to recall collectors. Droste states in her affidavit that she called Paeper and plaintiff to offer the lower level collector positions to them, though at no reduction from their supervisor's pay, and that they both declined, with Paeper saying she would prefer to collect unemployment pay. As noted, plaintiff asserts she never received such a call. On April 21, 2003, Allied recalled Paeper to the 4:30 - 10:00 p.m. supervisor position. Paeper accepted, returned, and quit on April 22, 2003, saying she was overwhelmed.

The same day as Paeper's resignation, Droste learned of a substantial technological change that would be implemented by Allied, requiring significant employee training during daytime hours. In light of the new technological changes, Droste and Ken King, Director of Operations, decided to hire a full-time supervisor to overlap the day and night shifts, working from 1:30 p.m. until 10:00 p.m., a time within

3

which plaintiff would have been unable to work for Allied. Allied employee Robin Graham was hired to fill this position on April 28, 2003.

In response to defendant's motion, plaintiff urges that she was the only African-American supervisor at the call center. Plaintiff asserts that defendant never contacted her to offer her the lower level position, that she substantively applied therefor by repeatedly advising Droste that she wanted to work, and further that defendant offered these positions to all other administrative and supervisory personnel who had been laid off. Additionally, plaintiff asserts that she had no work deficiencies, and that Droste never expressed any concern about the quality of her work. Plaintiff contends she was better qualified for the supervisory position than Paeper, an employee who preferred to collect unemployment rather than work.

Employment discrimination cases brought under federal or Iowa law are both analyzed by using the standards for federal cases. Henthorne v. Capitol Communications, 359 F3d 1021, 1024 n.2 (8th Cir. 2004). Absent direct evidence of discrimination, as here, plaintiff must demonstrate that she is a member of a protected class, that she was qualified to perform the job in question, that she suffered an adverse employment action, and that she was treated differently from others, similarly situated, who were not members of the protected class. Upon plaintiff's showing of this prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. Upon defendant's satisfying that burden, the burden then shifts to

plaintiff to show that defendant's reason was pretextual. <u>Hesse v. Avis Rent-a-Car System</u>, 394 F3d 624, 631 (8th Cir. 2005).

Reviewing this matter as set forth above in the light most favorable to the nonmovant in accordance with the foregoing standards, it appears plaintiff has come forward with a prima facie case, defendant has come forward with a legitimate, nondiscriminatory reason for its actions, plaintiff has in turn come forward with a showing of pretext, and that there exist disputed issues of fact precluding the entry of summary judgment.

It is therefore

ORDERED

Denied.

December 16, 2005.

*Edward J. McManus*, Judge
UNITED STATES DISTRICT COURT